## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

Your affiant, Brian Gleason, does swear and affirm the following to be true and accurate to the best of my knowledge and belief:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Federal Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms & Explosives, (ATF) and have been since July 19, 2020, and duly authorized to investigate violations of Title 18 United States Code, Title 26 United States Code in accordance with Title 18 U.S.C. § 3051. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

2. I, SA Brian Gleason, have completed in excess of 400 hours of instruction at the Federal Law Enforcement Training Center in Glynco, Georgia (FLETC) and graduated the Criminal Investigator Training Program and the ATF National Academy, Special Agent Basic Training (SABT). As an ATF Special Agent assigned to the ATF Newport News Field Office, I have investigated individuals for the illegal possession and use of firearms, illegal possession and distribution of controlled substances, the criminal use and possession of explosives and/or explosive mixtures and the criminal use of fire and associated violent crimes in violation of the Gun Control Act within Title 18 and the National Firearms Act within Title 26, of the United States Code. Prior to my tenure as an ATF Special Agent, I was a sworn law enforcement officer/ Asst. Fire Marshal/ Criminal Investigator in the Commonwealth of Virginia (VA) for six years and have investigated both misdemeanor and felony criminal violations of Local and Virginia State Criminal Code. Many of these investigations involved the execution of search warrants and warrants of

1

arrest and led to the arrest and conviction of individuals for violations of state and federal firearms laws, drug trafficking laws and fire and explosives laws.

3.   This affidavit is submitted in support of an application for a criminal complaint charging Kenya Mcchell CHAPMAN with violations of 18 U.S.C. §§ 922(a)(6) & 924(a)(2) (false statement during purchase of a firearm) and 18 U.S.C. § 922(a)(1)(A) (engaging in the business of dealing in firearms without a license).

4.   The facts and information contained in this affidavit are based upon my knowledge, training and experience, regarding investigations into the illegal possession and use of firearms, illegal possession and distribution of controlled substances, personal knowledge, and observations during this investigation, as well as the observations of other law enforcement officers involved in this investigation to include but not limited Special Agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and Special Agents of the Federal Bureau of Investigation (FBI). All observations not personally made by me were relayed to me by the individuals who made them or were conveyed to me by my review of records, documents, and other physical evidence obtained during this investigation to include joint investigatory work of the ATF & FBI.

5.   This affidavit is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrant. I have set forth only those facts that I believe to be necessary to establish probable cause for the charges described below and have not included each and every fact and matter observed by me or known to the Government.

## FACTS SUPPORTING PROBABLE CAUSE

*JALLOH Investigation & ODU Shooting*

6.   MOHAMED BAILOR JALLOH, a former National Guardsman, was recently released from federal custody (August 2024), and under a term of supervised release, which began

on December 23, 2024. On October 27, 2016, JALLOH pleaded guilty to attempting to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B, and was sentenced to a term of imprisonment of 132 months. *See United States v Mohamed Bailor Jalloh*, EDVA Case No. 1:16cr163. According to the Statement of Facts, ECF No. 37, and other case documents, in 2015 and 2016, JALLOH provided and attempted to provide material support or resources, to wit, personnel to the Islamic State of Iraq and the Levant ("ISIL"), the service of attempting to procure a weapon which he believed would be used in an ISIL directed attack on U.S. soil, and money to support ISIL, a designated foreign terrorist organization. JALLOH attempted to join ISIL multiple times, provided money to get ISIL recruits to Libya, provided money to an undercover FBI employee who he believed was a member of ISIL, planned an attack on U.S. military personnel in the United States specifically during Ramadan (which is also ongoing at the time of the attack described below), and purchased a Glock 44 semi-automatic pistol in the Eastern District of Virginia for this attack. JALLOH said at that time, "I will support you with whatever you need from me, I need the reward from Allah and my sins to be forgiven."

      7.     On or about October 15, 2004, the U.S. Secretary of State ("Secretary") designated al Qaeda in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act (the "INA") and as a Specially Designated Global Terrorist ("SDGT") under section 1(b) of Executive Order 13224. On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the INA and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the FTO listing: the Islamic State of Iraq and al-Sham (*i.e.*, "ISIS"—which is how the FTO will be referenced herein), the

Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. On September 21, 2015, the Secretary added the following aliases to the FTO and SDGT listings: Islamic State, ISIL, and ISIS. On March 22, 2019, the Secretary added the following aliases to the FTO and SDGT listings: Amaq News Agency, Al Hayat Media Center, Al-Hayat Media Center, and Al Hayat. To date, ISIS remains a designated FTO.

8. On or about March 12, 2026, beginning at approximately 10:42 AM, JALLOH committed a shooting at Old Dominion University, in Norfolk, VA using a Glock 44 .22 caliber firearm with a partially altered serial number. Glock firearms are not manufactured in the Commonwealth of Virginia. The attack occurred during an Army Reserve Officer's Training Corp ("ROTC") class/meeting which was attended by both active duty servicemembers and ROTC students. Before beginning to shoot, JALLOH twice asked the individuals in the room to confirm that it was an ROTC event. JALLOH was found deceased on scene by law enforcement and identified via an identification card located on his body.

9. JALLOH was taking online classes at Old Dominion University at the time of the shooting.

10. Norfolk Police Department has identified approximately four witnesses who stated the target said "Allah Akbar" during/shortly before the shooting. Per FBI, FTOs, to include ISIS, and their operatives are known to proclaim "Allahu Akbar," *i.e.* "God is Greater," prior to, beginning, or during an attack of violence.

11. To date, there are three victims shot by JALLOH, and one of those is deceased. The deceased victim was an active-duty U.S. service member at the time of the shooting, namely, a Lieutenant Colonel assigned to the ODU Army ROTC unit.

4

12. A residence in Sterling, Virginia was JALLOH's residence according to his U.S. Probation Officer and the address on his identification card. The U.S. Probation Officer visited the Sterling residence every six months and stated JALLOH lived there with his sister. The last visit was on or about November 17, 2025, and JALLOH had not informed the U.S. Probation Officer of any change of address.

13. ODU detectives reported seeing on CCTV JALLOH exit a Nissan Altima the morning of March 12, 2026, at approximately 9:40 a.m., prior to the shooting. He parked the Nissan Altima on campus in a parking lot adjacent to the Islamic Center, 1504 West 49th Street, Norfolk. They observed JALLOH going back and forth to a Nissan Altima, which was parked adjacent to the Islamic Center. The investigation, including emergency disclosures, has indicated that JALLOH rented a Nissan Altima from Turo on or about March 5, 2026, with a reservation through on or about March 13, 2026.

14. After the shooting, law enforcement located two iPhones, one in a green case and one in a black case, in the immediate vicinity of JALLOH's body in the classroom where the shooting occurred. The iPhone in the green case was claimed by a ROTC cadet. The black iPhone was seized and is in the custody of agents of the Norfolk FBI.

15. Following the shooting, a review of law enforcement databases identified the phone number x7929 as associated with JALLOH. A review of public Cash App profiles further identified this number as JALLOH's, and Turo also verified it was his number. Toll records obtained for JALLOH's number, from March 5, 2026, to March 12, 2026, from T-Mobile through an emergency disclosure were reviewed. The number is registered to JALLOH's mother. One of the phone numbers most frequently contacted in the week prior to the shooting was x5668, with which JALLOH had approximately 6 calls during the period of March 5 to March 12, 2026, the

most recent being a 19 second call at 10:19 AM, minutes before the shooting. A review of that number in law enforcement and open-source databases indicated it was associated with Kenya CHAPMAN of Smithfield, Virginia, who was the subject of a prior ATF investigation conducted by this affiant for firearm straw purchases, as detailed below. None of the other numbers were associated with an address Smithfield, Virginia other than Chapman's per FBI.

16. A review of open-source databases indicated that CHAPMAN resides at an address in Smithfield (the "Smithfield residence"). Surveillance on the evening of March 12, 2026, saw CHAPMAN leave the Smithfield residence, get in a vehicle, and then return to the residence. He had been inside the Smithfield residence for the majority of the evening of March 12, 2026.

17. A law enforcement review of T-Mobile location data received from its emergency disclosure for x7929 indicated the following: JALLOH's phone traveled from the vicinity of ODU to the vicinity of the Smithfield residence the morning of March 6, 2026, and left the area several hours later and traveled to the vicinity of the Sterling residence. It returned to the vicinity of ODU early in the morning on March 10, 2026. At approximately 12:30 pm on March 11, 2026, the day before the shooting, JALLOH's phone departed the vicinity of ODU and traveled to the vicinity of the Smithfield residence, where it stayed for approximately 1.5 hours and then traveled to the vicinity of the Islamic Center of Hampton, Virginia. At approximately 11:23pm on March 11, 2026, the evening before the shooting, JALLOH's phone arrived in the vicinity of the Smithfield residence and stayed overnight. At approximately 8:58 am on the morning of March 12, 2026, JALLOH's phone departed the vicinity of the Smithfield residence and traveled to the vicinity of ODU. The information above described as being in the vicinity of the Smithfield residence was from a cell phone tower located approximately 1.68 miles northeast of the Smithfield residence, which is the closest T-Mobile tower to the Smithfield residence.

18. Flock data provided by FBI from the two cameras closest to the Smithfield residence captured the Nissan Altima that JALLOH rented and drove to ODU on March 5 and March 11, 2026 as depicted below:



*Prior ATF Investigation*

19. In 2021, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Newport News Police Department (NNPD) investigated Kenya CHAPMAN for straw purchasing three firearms, all with short time-to-crime recoveries. CHAPMAN was listed as the purchaser for all three firearms. Two the firearms were recovered from a homicide shooting in the fall of 2021 – one from a victim and one from the shooter. Another firearm was recovered from a drunk in public incident. CHAPMAN was interviewed and admitted to straw purchasing all three firearms. ATF issued CHAPMAN a straw purchaser warning letter and CHAPMAN wrote a letter of apology.

20. Specifically, the ATF investigation revealed the following three purchases:

    a. T20210267089- HS PRODUKT, Model XD9, 9mm pistol, serial number BA164470. This firearm was purchased on April 22, 2021, by CHAPMAN from Treasure Chest Pawn & Gun, LLC 4908 A West Mercury Blvd. Hampton, VA 23666. The firearm was recovered by Newport News Police Department (NNPD), during a drunk in public (DIP) incident in the possession of H.B. on June 16, 2021.

    b. T20210387229- TAURUS INTERNATIONAL, Model G2C/ PT111G2A, 9mm pistol, serial number ACD788673. This firearm was purchased on June 6, 2021, by CHAPMAN from Bass Pro Shops Outdoor World #018 1972 Power Plant Parkway Hampton, VA 23666. The firearm was recovered by Newport News Police Department (NNPD), during a homicide/murder incident in the possession of D.F. on September 6, 2021.

    c. T20210387234- GLOCK INC., Model 17, 9mm serial number AFUD556. This firearm was purchased on August 16, 2021, by CHAPMAN from Winfree Firearms Inc. 4018 George Washington Memorial Highway, Yorktown, VA 23692. The firearm was recovered by Newport News Police Department (NNPD), during the homicide/murder incident (NNPD Incident# 202158524) on September 06, 2021, in the possession of M.F.

21. On October 22, 2021, this affiant conducted a joint non-custodial interview of CHAPMAN at NNPD headquarters. CHAPMAN admitted to straw purchasing the above (3) three firearms from area FFLs (Federal Firearms Licensees), and reported he did so for money (financial gain). CHAPMAN was shown the Form 4473 (Firearm Transaction Record) for each firearm and acknowledged his signature on each form. On each form, he falsely indicated that he was the

actual purchaser and transferee, would possess the firearm, and acknowledged that acquiring the firearm on behalf of another person was in violation of federal law.

22. ATF researched available records and located no known firearm purchases by CHAPMAN within the year before the ODU shooting. CHAPMAN has not been convicted of a felony.

23. On March 13, 2026, law enforcement executed a search warrant for the Smithfield residence. They located .22 caliber ammunition consistent with the firearm recovered from the ODU shooting in a bag at the Smithfield residence from which CHAPMAN domiciled. After being provided *Miranda* warnings, and after initially claiming he found the firearm in the woods, CHAPMAN admitted to ATF & FBI joint investigatory agents that he stole the aforementioned firearm in Newport News, Virginia approximately a year prior to the ODU shooting from a vehicle located in the Marshall Courts area of the City of Newport News, VA and then sold the firearm to JALLOH for $100 (profit) in Smithfield, VA adjacent to the Smithfield residence the week of the ODU shooting offense. CHAPMAN positively identified JALLOH via photo showed to him by this affiant. He showed agents the $100 bill provided to him by JALLOH for the firearm. FBI seized this item as evidence. CHAPMAN stated he met JALLOH at work and reported that he stated to CHAPMAN that he needed a firearm for protection as a delivery driver. He denied noticing the firearm had an altered serial number. He admitted knowing JALLOH had spent some time incarcerated but denied knowing JALLOH was a convicted felon. CHAPMAN reported to ATF & FBI Agents at time of interview that he had no idea that JALLOH would commit the ODU shooting attack. CHAPMAN reported that he knew JALLOH had traveled down to Hampton Roads, VA from the DC Metro area and had reported to him that he was seeing a female and wanted to attend an area school to obtain his CDL.

## CONCLUSION

24. Based on the information and evidence set forth above, I respectfully submit that there is probable cause to establish that:

    a. On or about April 22, 2021, in the City of Hampton, in the Eastern District of Virginia and elsewhere, Kenya Mcchell CHAPMAN, violated 18 U.S.C. §§ 922(a)(6) & 924(a)(2) (false statement during purchase of a firearm);

    b. On or about June 6, 2021, in the City of Hampton, in the Eastern District of Virginia and elsewhere, Kenya Mcchell CHAPMAN, violated 18 U.S.C. §§ 922(a)(6) & 924(a)(2) (false statement during purchase of a firearm);

    c. On or about August 16, 2021, in the City of Yorktown, in the Eastern District of Virginia and elsewhere, Kenya Mcchell CHAPMAN, violated 18 U.S.C. §§ 922(a)(6) & 924(a)(2) (false statement during purchase of a firearm);

    d. In and around March 2026, in Isle of Wight County, in the Eastern District of Virginia and elsewhere, Kenya Mcchell CHAPMAN violated 18 U.S.C. § 922(a)(1)(A) (engaging in the business of dealing in firearms without a license).

25. Accordingly, I request that the complaint and an arrest warrant be issued, charging Kenya Mcchell CHAPMAN with this offense.

Further your affiant sayeth naught.

_____
Brian J. Gleason, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

Sworn and subscribed to before me this 13th day of March 2026.

_____
Hon. Douglas E. Miller
UNITED STATES MAGISTRATE JUDGE